### Appeal of MEDBURY-WILSON CO.        Docket No. 1001.

> A corporation conducting a general insurance agency business, a large portion of whose gross income comes to it by reason of its association and close business relations with two other substantially capitalized corporations, owning or controlling large property interests, is not entitled to classification as a personal service corporation under the provisions of the Revenue Act of 1918.

Submitted March 9, 1925; decided April 7, 1925.

*John W. Ford, Esq.*, for the taxpayer.
*J. A. Adams, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This is an appeal from a Commissioner's letter asserting a deficiency in taxes for the year 1918 in the amount of $9,758.22. The issue involved is whether the taxpayer is entitled under the provisions of the Revenue Act of 1918 to be classified as a personal service corporation.

#### FINDINGS OF FACT.

The taxpayer is a corporation organized in the year 1906 under the laws of the State of Ohio, and having its principal office at Youngstown, in that State. Its authorized capital stock consists of 250 shares of a stated par value of $100.

In the year 1906, and for some time prior thereto, F. B. Medbury had been engaged in conducting an insurance agency, and a corporation then known as the Realty Guaranty Trust Company, but later known as the Realty Company, was and had been conducting in connection with its realty business an insurance department which was under the direct management of W. B. Hall who, during the period under consideration, was president of the Realty Company.

Medbury and the Realty Company determined to consolidate their insurance agencies and, to carry out this purpose, caused the taxpayer corporation to be organized and to take over the insurance business formerly conducted by Medbury and the insurance department of the Realty Company. Shares of stock of the taxpayer were issued to Medbury and to nominees of the Realty Company in consideration of the transfer of such insurance agency business.

Prior to the year 1918 there had also existed in Youngstown a corporation known as the Realty Security Company, which also operated an insurance department in connection with its other business, and prior to the year 1918 this insurance department of the Realty Security Company was transferred to the taxpayer corporation and capital stock shares were issued to the Realty Security Company and its nominee in consideration for the transfer of the Realty Security Company's insurance business.

Thereafter, and prior to the year 1918, the taxpayer corporation acquired another insurance agency business, which had formerly been conducted by M. F. Dillon, and for this business taxpayer paid $2,888.23.

During the year 1918 the 250 shares of authorized capital stock of the taxpayer corporation were all issued and outstanding and held by individuals or corporations as follows:

| Name | Number of shares | Percentage of total |
|------|------|------|
| F. B. Medbury | 85 | 34 |
| F. B. Medbury, jr | 21¼ | 8. 5 |
| Ben L. Agler | 21¼ | 8. 5 |
| The Realty Co.: | | |
| W. B. Hall, trustee | 84 | |
| W. P. Arms, trustee | 1 | |
| | 85 | 34 |
| The Realty Security Co.: | | |
| Name of corporation | 36½ | |
| E. M. Wick, trustee | 1 | |
| | 37½ | 15 |
| Total | 250 | 100 |

During the year 1918, F. B. Medbury was president of the taxpayer company and devoted his entire time to the active conduct of the company's business.

Benjamin L. Agler was vice president of the taxpayer company and for four years prior to 1918 had devoted all of his time to the active conduct of the company's business. During the entire year of 1918, he was in the military service of the United States. Shortly after the close of the year 1918, he returned to his position with the company and thereafter was continuously engaged in the active conduct of its business.

F. B. Medbury, jr., for some years prior to 1918, and continuously since 1919, was actively engaged as solicitor of insurance for the taxpayer company but during all of the year 1918 he was in the military service of the United States.

W. B. Hall was president and W. P. Arms was vice president of the Realty Company, a real estate and building, operating and selling corporation in the City of Youngstown, Ohio. Through affiliated and controlled corporations, as well as other corporate and personal interests of its board of directors and stockholders, the Realty Company had access to the placing of substantial amounts of insurance business. The stockholding interests of W. B. Hall and W. P. Arms in the taxpayer company originated in the acquisition in 1906 by the taxpayer of the insurance department of the Realty Company, then directly operated by the Realty Company and under the supervision of W. B. Hall. During the year 1918 the activities of W. B.

Hall and W. P. Arms in the taxpayer's affairs approximated their former activities with the former insurance department of the Realty Company. W. B. Hall served as one of taxpayer's directors; was in continual touch with its business in a consulting and advisory capacity; regularly and frequently originated new business and was instrumental in holding renewal business for the taxpayer; was in conference with its officers at regular intervals averaging between once and twice a week; on its behalf frequently personally solicited and closed insurance business. He regularly exercised a close supervision and scrutiny over the general policies and business of the taxpayer. The relation of W. P. Arms to taxpayer's business was similar to that of W. B. Hall but less active and more occasional.

E. Mason Wick was secretary of the Realty Security Company, a real estate and building, selling, and operating corporation in the City of Youngstown, Ohio. The stockholding interest of E. Mason Wick and the Realty Security Company in the taxpayer company originated in the acquisition in 1916 by it of the insurance department directly operated by the Realty Security Company. In 1918, E. Mason Wick served as a director of taxpayer company and was in frequent conference with its officers from time to time in a consulting and advisory capacity. His activities in its business approximated his former activities with the former insurance department of the Realty Security Company which had been under his supervision. Through personal and corporate interests and relations of the Realty Security Company he regularly contributed a substantial amount of insurance business to the taxpayer, both new and renewal, and from time to time personally solicited and turned over new business.

During the year 1918 taxpayer had in its employ five persons not stockholders engaged in the clerical office work of the company. These persons received salaries as compensation for their service.

During the year 1918 the taxpayer employed three persons not stockholders, part of whose time was devoted to the soliciting of business and part to office work. The insurance business closed by these persons, except in a few cases, was originated by stockholders. Prospects were referred to them and instructions given them and their solicitation was under the supervision and direction of stockholders. Less than 10 per cent of the premium income in 1918 was attributable to business closed by these solicitors.

The taxpayer's petition alleged, and the Commissioner's answer admitted, "that the taxpayer's capital during the year 1918 was not a material income-producing factor."

The Realty Company was, during the year 1918, and for many years prior thereto had been, an important property owning and managing corporation, operating chiefly in the City of Youngstown, Ohio. It had a substantial capital represented by 4,000 shares of outstanding preferred stock owned by approximately 171 stockholders and 2,000 shares of common stock owned by approximately 27 stockholders.

The principal part of this company's business was the management of large business properties. Its officers and members of its board of directors were all men with important interests in the large steel manufacturing concerns of Youngstown, Ohio, and

through their corporate organization and manifold business affiliations, were an important element in the actual control of a large portion of the manufacturing business of the city and the influence of such business management and of their associations contributed toward directing the flow of insurance business into the office of the taxpayer company.

The Realty Security Company was an important business organization of Youngstown, Ohio, having a substantial capital represented by 2,000 shares of preferred stock owned by approximately 70 stockholders and 1,990 shares of common stock owned by approximately 44 stockholders. The principal business of this corporation was the development of suburban building real estate and construction of residence houses and other properties, and the capital and influence of this corporation was at all times active in directing the flow of insurance business into the office of the taxpayer company.

### DECISION.

A careful analysis of the record of this appeal has led the Board to the conclusion that a very large, although not definitely measured, portion of the gross income of the taxpayer comes to it, not through the personal services of its stockholders, but through its association and close business relations with two important and substantially capitalized corporate organizations, whose manifold business interests control the flow of the insurance business into the office of the taxpayer, and therefore the taxpayer was not, during the year 1918, a personal service corporation.

The deficiency in tax computed by the Commissioner is approved.